[Nos. 22294–5–I; 22390–9–I.   Division One.   August 14, 1989.]

SUNRISE GROUP HOMES, INC., *Respondent,* v. BERNICE FERGUSON, *Appellant.*

FRANCES M. FERGUSON, *as Guardian, Appellant,* v. SUNRISE GROUP HOMES, INC., ET AL, *Respondents.*

*Lonnie Davis*, for appellant.

*Deane Minor* and *Tuohy, Hammer & Minor*, for respondent Sunrise Group Homes, Inc.

COLEMAN, C.J.—Frances Ferguson, as guardian for Bernice Ferguson, appeals from the trial court's finding of unlawful detainer. Ferguson argues that the trial court erred by finding that the Residential Landlord–Tenant Act of 1973 did not apply to the action, thus precluding her from raising the affirmative defenses available under that act.

Bernice Ferguson is developmentally disabled and has lived in the Olivia Park Group Home in Everett for many years. Sunrise Group Homes owns the Olivia Park facility and operates the home under a contract with the Department of Social and Health Services, which pays Sunrise a per diem fee for each resident in return for Sunrise's residential services. The residential clients also pay Sunrise a fee in return for living there.

In 1986, pursuant to a provision in the parties' contract allowing Sunrise to have residents removed by DSHS if Sunrise could not meet the client's needs, or the removal would be in the client's best interests, or the client had failed to make proper payments, Sunrise asked DSHS to remove Bernice from the home. The contract further provided that if the client refused to leave the home, it would be Sunrise's responsibility to effect removal by means of civil litigation.

In December 1985, DSHS granted Sunrise's request to have Bernice removed. Ferguson pursued administrative review of the decision to remove Bernice, culminated in a decision of the trial court on May 6, 1988, affirming the decision to remove Bernice from the facility, but requiring Sunrise to do so by way of the contractually required unlawful detainer action. The court specifically noted that RCW 59.18, the Residential Landlord–Tenant Act of 1973

(RLTA), does not apply to the Olivia Park Group Home agreement.

Sunrise filed an unlawful detainer action on May 6, 1988. The trial court granted Sunrise's motion for a writ of restitution on May 18, 1988. The trial court again held that the RLTA did not apply to the Olivia Park facility and thus did not consider Ferguson's claim that the eviction was in retaliation for a complaint Ferguson had filed against the facility. Ferguson seeks review of the administrative and unlawful detainer actions. The appeals have been consolidated because they present the same issue. Ferguson has posted a bond staying the writ of restitution pending the outcome of this appeal.

We first address appellant's argument that the trial court erred when it held that the RLTA did not apply to the Olivia Park Group Home, thereby depriving appellant of the opportunity to raise the statutory affirmative defense of retaliation in the unlawful detainer action.

The RLTA excludes from the application of its provisions, among other situations,

> [r]esidence at an institution, whether public or private, where residence is merely incidental to detention or the provision of medical, religious, educational, recreational, or similar services, including but not limited to correctional facilities, licensed nursing homes, monasteries and convents, and hospitals . . .

RCW 59.18.040(1).

The Olivia Park facility is a congregate care facility.[1] Under the regulatory provisions of the Washington Administrative Code, a congregate care facility is defined as "a boarding home licensed under chapter 18.20 RCW and

---

[1]The administrative hearing officer characterized Olivia Park as a congregate care facility, specifically finding that Bernice's score on her assessment of needs checklist required her to move from the Olivia Park congregate care facility and into a group home, which would be better able to meet her needs. Appellant has not assigned error either to the administrative review findings or to the trial court's reliance on them. Accordingly, the unchallenged findings are considered verities in the record before this court. *See Crabtree v. Lewis,* 86 Wn.2d 282, 290, 544 P.2d 10 (1975).

RCW 74.08.044, or a licensed private establishment as defined by chapter 71.12 RCW, which has entered into a congregate care contract with the department." WAC 388–15–560(1). In order for Bernice Ferguson to be eligible for DSHS sponsored congregate care living, she has to meet the following eligibility criteria:

    (a)   Be age eighteen or older;
    (b)   Be a recipient of:
    (i)   Supplemental Security Income,
    (ii)   Continuing general assistance, or
    (iii)   Title XIX categorically relatable to SSI;
    (c)   Be unable to maintain a safe environment in an independent living arrangement or require personal care and supervision, assistance with activities of daily living and/or health–related services;
    (d)   Not require nursing care in excess of that described in RCW 18.20.160 and the provisions of WAC 248–16–228; . . .

WAC 388–15–562(1).

■■ Under these criteria, a client at the Olivia Park facility has less supervision and assistance with daily living than does a client in a nursing home or hospital, WAC 388–15–562(1)(c), (d), yet the Olivia Park client still has a more structured environment and has more services provided than does the tenant in a traditional rental situation. Congregate care facilities, while not among the named living arrangements explicitly excluded from the RLTA such as licensed nursing homes, convents, and hospitals, RCW 59.18.040, do fall within the broader language of the exclusion for "[r]esidence at an institution, . . . where residence is merely incidental to detention or the provision of medical, religious, educational, recreational, or similar services . . ." RCW 59.18.040(1). This exclusion applies to any living arrangement where the tenant has a purpose for living there independent and apart from the basic requirements of shelter and amenities.

Appellant argues that the RLTA focuses on whether the provision of room and board is incidental to some other service or activity, and then stresses that Bernice's room and board at Olivia Park are not incidental but are the very reason she lives there. Appellant misconstrues the word

"incidental" as used in the exclusion. It does not mean that room and board must be trivial or unimportant in comparison with the overall institutional purpose; it means that living there is subordinate or attendant to the institutional purpose. For example, the room and board provided by college dormitories is attendant to college enrollment. College dormitories are clearly excluded from the RLTA. RCW 59.18.040(1).

Similarly, the room and board provided by the Olivia Park facility is incidental to the receipt of services the facility was created to provide. Congregate care homes provide those who are unable to "maintain a safe environment in an independent living arrangement" with supervision and "assistance with activities of daily living and/or health–related services[.]" WAC 388–15–562(1)(c).

While congregate care facilities exist to keep developmentally disabled persons mainstreamed, and to that extent are an attempt at "deinstitutionalization," that is not to say they lack an institutional purpose above and beyond the provision of fundamental room and board services. The RLTA specifically excludes such institutional living arrangements from the scope of its provisions. RCW 59.18.040(1). The trial court concluded that, as a matter of law, the provisions of the RLTA do not apply to the Olivia Park living arrangement. That conclusion is supported by the findings of fact, which in turn are supported by substantial evidence. The trial court did not err. *Ridgeview Properties v. Starbuck,* 96 Wn.2d 716, 719–20, 638 P.2d 1231 (1982).

■ We next consider whether respondent is entitled to recover attorney's fees. Respondent has not identified any provision in its rental agreement with appellant providing for fees in an unlawful detainer action. For the reasons discussed, *supra,* the RLTA does not apply to this action and, accordingly, there is no legal authority permitting respondent to recover attorney's fees. RAP 18.1; *see Glesener v. Balholm,* 50 Wn. App. 1, 9, 747 P.2d 475 (1987). There is no contractual provision in this case permitting the prevailing

party here to recover such fees. Accordingly, respondent is not entitled to recover attorney's fees from appellant. *See Dauphin v. Smith,* 42 Wn. App. 491, 494, 713 P.2d 116 (1986).

The judgment of the trial court is affirmed.

WEBSTER, J., and REVELLE, J. Pro Tem., concur.